# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

_____

HEALTHCARE ASSOCIATION OF
NEW YORK STATE, INC., NEW YORK
ASSOCIATION OF HOMES AND
SERVICES FOR THE AGING, INC.,
NEW YORK STATE HEALTH
FACILITIES ASSOCIATION, INC.,
NYSARC, INC., and UNITED
CEREBRAL PALSY ASSOCIATIONS
OF NEW YORK STATE, INC.,

                              *Plaintiffs*,

                v.

DAVID A. PATERSON, Governor of the
State of New York, ANDREW M.
CUOMO, Attorney General of the State of
New York, and COLLEEN C.
GARDNER, Commissioner of Labor of
the State of New York,

                              *Defendants*.

_____

) Index No. 1:03-cv-00413-NPM-RFT

**MEMORANDUM OF *AMICUS CURIAE* CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.**

| | | |
|---|---|---|
| ROBIN S. CONRAD<br>SHANE B. KAWKA<br>NATIONAL CHAMBER<br>LITIGATION CENTER, INC.<br>1615 H Street, N.W.<br>Washington, D.C. 20062<br>(202) 463-5337<br>*Of Counsel* | WILLIS J. GOLDSMITH<br>(Bar Roll No. 101815)<br>JONES DAY<br>222 East 41st Street<br>New York, NY 10017<br>(212) 326-3649<br>*Attorney for* Amicus Curiae | MICHAEL A. CARVIN<br>LUKE A. SOBOTA<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001<br>(202) 879-3939<br>*Attorneys for* Amicus Curiae |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii
STATEMENT OF INTEREST OF *AMICUS CURIAE* ................................................................ iii
ARGUMENT ........................................................................................................................ 1
CONCLUSION .................................................................................................................... 8

## **TABLE OF AUTHORITIES**

Page

### **CASES**

*Beth Israel Hosp. v. NLRB*,
      437 U.S. 483 ............................................................................................................3

*Chamber of Commerce of the United States v. Brown*,
      128 S. Ct. 2408 (2008) ..................................................................................... *passim*

*Greater New York Metropolitan Food Council, Inc. v. Giuliani*,
      195 F.3d 100 (2d Cir. 1999), *abrogated on other grounds,*
      *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) ..........................................4

*Harris v. McRae*,
      448 U.S. 297 (1980) ..................................................................................................5

*Healthcare Ass'n of New York State v. Pataki*,
      388 F. Supp. 2d 6 (N.D.N.Y. 2005) ..................................................................1, 3, 4, 7

*Healthcare Ass'n of New York State v. Pataki*,
      471 F.3d 87 (2d Cir. 2006) .......................................................................................5

*Livadas v. Bradshaw*,
      512 U.S. 107 (1994) ...............................................................................................3, 6

*Lodge 76, Int'l Ass'n of Machinists v. Wis. Employment Relations Comm'n*,
      427 U.S. 132 (1976) ..................................................................................................6

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
      418 U.S. 264 (1974) ..................................................................................................6

*Perez v. Campbell*,
      402 U.S. 637 (1971) ..................................................................................................4

*Wis. Dep't of Industry, Labor & Human Relations v. Gould Inc.*,
      475 U.S. 282 (1986) ..................................................................................................2

### **STATUTES**

N.Y. Labor Law § 211-a ............................................................................................ *passim*

Cal. Gov't Code § 16645.2 .................................................................................................7

Cal. Gov't Code § 16645.7 .................................................................................................7

Cal. Gov't Code § 16648 ....................................................................................................7

**STATEMENT OF INTEREST OF *AMICUS CURIAE***

Directly representing 300,000 businesses and organizations, and indirectly representing the interests of more than 3,000,000 businesses and organizations of every size and in every region of this country, the Chamber of Commerce of the United States of America ("Chamber") serves as the principal voice of the American business community in the courts by regularly filing *amicus curiae* briefs and litigating as party-plaintiff. It was the lead petitioner, and both briefed and presented oral argument, in the Supreme Court case that this Court recently held changed the relevant law, *Chamber of Commerce of the United States v. Brown*, 128 S. Ct. 2408 (2008).

Many of the Chamber's members perform work funded in whole or in part by the State of New York and its political subdivisions. Thus, members of the Chamber wishing to exercise their protected rights of free speech under the National Labor Relations Act ("NLRA") are subject, or potentially subject, to New York Labor Law § 211-a ("section 211-a"), including its recordkeeping requirements, litigation risks, and civil penalties. Accordingly, the validity of section 211-a under *Brown* is of great legal and practical importance to the Chamber. In this case, the Chamber has been permitted to present oral argument before this Court and to file *amicus* briefs with this Court and the Court of Appeals.

The Chamber is authorized to file this brief under this Court's Order of May 19, 2010.

## ARGUMENT

This Court recently held that the Supreme Court's decision in *Brown* "changes the relevant law, thereby relieving this court from the Second Circuit's mandate in this case." Order of Mar. 23, 2010 at 3. The *Brown* Court declared facially preempted a California law that this Court recognized to be "remarkably similar" to the New York law at issue here. *Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 388 F. Supp. 2d 6, 23 (N.D.N.Y. 2005). Specifically, *Brown* reaffirms that NLRA preemption turns upon whether the purpose of the State's spending restriction is to further a labor policy objective. *See Brown*, 128 S. Ct. at 2414-17. Applying this very test, this Court previously held that section 211-a was enacted to further New York's labor policy and "significantly curtail[s] the ability of employers to voice their opposition to unions" in contravention of the NLRA. *Healthcare Ass'n*, 388 F. Supp. 2d at 20. It therefore ruled that section 211-a is preempted. *See id.* at 25. Because *Brown* affirms the correctness of that ruling, this Court should (again) grant plaintiffs' motion for summary judgment.

### SECTION 211-A IS PREEMPTED UNDER THE SUPREME COURT'S PREEMPTION ANALYSIS

The Supreme Court in *Brown* held that materially identical provisions of a California law, Assembly Bill 1889 ("AB 1889"), were facially "pre-empted under *Machinists* because they regulate within a zone protected and reserved for market freedom." *Brown*, 128 S. Ct. at 2412 (internal citation and quotation marks omitted). Reviewing the text, structure, and history of the NLRA, the Supreme Court found "explicit direction from Congress to leave noncoercive speech unregulated." *Id.* at 2414. To determine whether AB 1889 constituted "regulation," the *Brown* Court asked whether the statute's "purpose" was "the furtherance of a labor policy" or "the efficient procurement of goods and services." *Id.* at 2415. The Court made clear that AB 1889 would escape preemption only if its "objective" was to "ensur[e] that state funds are spent in

accordance with the purposes for which they are appropriated." *Id.* The *Brown* Court—like all 15 judges on the Ninth Circuit *en banc* panel—determined that this was not AB 1889's purpose because "[i]n contrast to a *neutral affirmative requirement* that funds be spent solely for the purposes of the relevant grant or program, AB 1889 imposes a *targeted negative restriction* on employer speech about unionization." *Id.* (emphasis added).

The Supreme Court confirmed that if the purpose is labor policy, the state law is preempted regardless of whether the illegitimate purpose is accomplished through the police or spending power. *See* 128 S. Ct. at 2414-15. Having found that the purpose of AB 1889 was to regulate noncoercive employer speech, the Supreme Court determined that the fact that the regulation came through a spending restriction was "'a distinction without a difference.'" *Id.* at 2415 (quoting *Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*, 475 U.S. 282, 287 (1986)). Just as "California plainly could not directly regulate noncoercive speech about unionization by means of an express prohibition," the Supreme Court held, it was "equally clear that California may not indirectly regulate such conduct by imposing spending restrictions on the use of state funds." *Id.* at 2414-15. The *Brown* Court explained that where the "'point of the statute'" is to further a labor policy, the fact that the State has chosen "'to use its spending power rather than its police power d[oes] not significantly lessen the inherent potential for conflict' between the state and federal schemes." *Id.* at 2415 (quoting *Gould*, 475 U.S. at 287, 289).

For these reasons, *Brown* flatly rejects the argument, made by New York in its Supreme Court *amici* brief, that "States are entitled to attach . . . labor-related conditions on the use of their funds." Brief for the State of New York *et al.* as *Amici Curiae* Supporting Respondents at 27, *Brown*, 128 S. Ct. 2408 (No. 06-939), *available at* 2008 WL 467888. The Supreme Court made clear that "[a]lthough a State may choose to fund a program dedicated to advance certain

permissible goals, it is not permissible for a State to use its spending power to advance an interest that—even if legitimate in the absence of the NLRA—frustrates the comprehensive federal scheme established by that Act." 128 S. Ct. at 2417 (internal citations, quotation marks, and alterations omitted).

The *Brown* Court thus reaffirmed that NLRA preemption "'turns on the actual content of [the State's] policy and its real effect on federal rights.'" 128 S. Ct. at 2414 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 119 (1994)). This Court previously declared section 211-a preempted applying this very test. It found that section 211-a, like AB 1889, "does not address a specific proprietary problem" but rather "is designed to have a broad social impact, by altering the ability of a wide range of recipients of state money to advocate about union issues." *Healthcare Ass'n*, 388 F. Supp. 2d at 17, 18-19 (internal citation and quotation marks omitted). It also found that section 211-a, like AB 1889, operates to "significantly curtail[] the ability of employers to voice their opposition to unions." *Id.* at 20. Thus, for the reasons already identified by this Court, section 211-a is preempted under *Brown*.[1]

***Section 211-a Has A Labor Policy Purpose.*** It is clear that New York enacted section 211-a to disassociate itself from union-related employer speech, not to serve any fiscal interest. *Brown* found that AB 1889 had such a labor policy purpose because it was neither "'specifically tailored to one particular job'" nor "a neutral affirmative requirement that funds be spent solely for the purposes of the relevant grant or program." 128 S. Ct. at 2415 (citation omitted). Rather, AB 1889 was a "targeted negative restriction on employer speech about unionization." *Id.* The

---

[1] The National Labor Relations Board—whose construction of the NLRA and its preemptive effect are "entitled to considerable deference," *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500 (1978)—has also taken this position. *See* Memorandum of Law of Amicus Curiae National Labor Relations Board Concerning *Chamber of Commerce v. Brown* at 1 (Sept. 16, 2008) ("It is the Board's position that *Brown* renders unnecessary the Second Circuit's previous direction of additional fact-finding in this case, and that this Court should find that Section 211-a is preempted.").

same is obviously true of section 211-a.  Indeed, as this Court previously held, section 211-a "by its design sweeps broadly to shape policy in the overall labor market."  *Healthcare Ass'n*, 388 F. Supp. 2d at 19 (internal citation and quotation marks omitted).

Although section 211-a shares the exact dispositive flaws of AB 1889, New York has argued for a different interpretation of its purpose solely because its preamble's "*stated* purpose is unquestionably proper."  Defendants' Memorandum of Law Concerning *Chamber of Commerce v. Brown* at 7 (Sept. 9, 2008) ("Defendants' *Brown* Memorandum") (emphasis added).  But courts "do not blindly accept the articulated purpose of [a state law] for preemption purposes."  *Greater N.Y. Metro. Food Council, Inc. v. Giuliani*, 195 F.3d 100, 108 (2d Cir. 1999), *abrogated on other grounds*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001).  Were it otherwise, as the Supreme Court has explained, state legislatures could "nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law."  *Perez v. Campbell*, 402 U.S. 637, 652 (1971); *accord Livadas*, 512 U.S. at 127 (rejecting argument that labor law was "animated simply by the frugal desire to conserve the State's money").  Thus, as this Court previously determined, "despite [its] proprietary language," section 211-a is "regulatory in nature."  *Healthcare Ass'n*, 388 F. Supp. 2d at 20; *see also id.* ("mere recitation of a proprietary purpose is not . . . sufficient to overcome the regulatory impact of a given governmental action").

If anything, the preamble *confirms* that section 211-a is a "targeted negative restriction on employer speech about unionization."  *Brown*, 128 S. Ct. at 2415.  As *Brown* reflects, the principle of "sound fiscal management" recited in section 211-a's preamble—that "state funds . . . should be utilized solely for the public purpose for which they were appropriated"—would

- 4 -

logically lead to a neutral law barring *any* unauthorized use of state funds. N.Y. Lab. Law § 211-a(1). Yet section 211-a posits that the "proprietary interests of this state are adversely affected" *only* when "public funds are . . . used to encourage or discourage union organization." *Id.* By specially targeting just one of the countless possible uses of "public funds"—employer speech about union organizing—section 211-a manifests New York's targeted concern about *that* use, not a general concern that appropriated funds are "expended solely for the purpose for which they were appropriated." *Id.*

In fact, before *Brown* was decided, New York *conceded* this labor policy objective in the Second Circuit when it described section 211-a's "refusal to fund" employer speech as necessary "to keep the State neutral in *labor* disputes." Brief for Defendants-Appellants at 15, 22, *Healthcare Ass'n*, 471 F.3d 87 (2d Cir. 2006) (No. 05-2570-cv), *available at* 2005 WL 6136412; Reply Brief for Defendants-Appellants at 1, 3, 10, *Healthcare Ass'n*, 471 F.3d 87 (2d Cir. 2006) (No. 05-2570-cv), *available at* 2005 WL 6136416 (emphasis added). California defended AB 1889 in virtually identical terms before the Supreme Court, arguing that, "in order to preserve California's neutrality," the State "does not subsidize" employer speech. Brief for the State Respondents at 9, *Brown*, 128 S. Ct. 2408 (No. 06-939), *available at* 2008 WL 405541 ("California Supreme Court Brief"). But a State's decision to remain "neutral" on a controversial activity by not "subsidizing" it undeniably expresses a legislative value judgment about the activity being denied support. The purpose of the Hyde Amendment, for example, is to keep the federal government "neutral" on abortion by refusing to "subsidize" it. This simply *confirms* that the Hyde Amendment is clearly animated by policy concerns about abortion and not by a desire to reduce federal outlays, even though that is its inevitable effect. *See Harris v. McRae*, 448 U.S. 297, 319 (1980). So too, New York's purported goal of remaining "neutral in

labor disputes" by "refus[ing] to fund" one aspect of them—employer speech—clearly reflects its concerns about such speech, not some fiscal concern. The State's supposed "neutrality" is nothing more than its value judgment that employer speech about union organizing should be regulated.

***Section 211-a Burdens Noncoercive Employer Speech.*** Consistent with its regulatory purpose, section 211-a has a "'real effect on federal rights.'" *Brown*, 128 S. Ct. at 2414 (quoting *Livadas*, 512 U.S. at 119). The *Brown* Court found that AB 1889's "enforcement mechanisms put considerable pressure on an employer either to forego his 'free speech right to communicate his views to his employees,' or else to refuse the receipt of any state funds," *id.* at 2416 (citation omitted), thereby impermissibly "chill[ing] one side of 'the robust debate which has been protected under the NLRA,'" *id.* at 2417 (quoting *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 275 (1974)). The same is true with respect to section 211-a's similar enforcement mechanisms, as this Court previously determined.

New York has never argued, nor could it argue, that section 211-a's compliance costs and litigation risks place *no* burden on noncoercive employer speech. Rather, New York has attempted to *minimize* section 211-a's burdens by pointing to differences from AB 1889 (*e.g.*, the absence of a segregation requirement and a *qui tam* provision). *See* Defendants' *Brown* Memorandum at 7-9. But the question is not whether the State has imposed the *most onerous burden* possible on employer speech; it is whether section 211-a "impinge[s] on" speech that Congress intended to leave unregulated. *Lodge 76, Int'l Ass'n of Machinists v. Wis. Employment Relations Comm'n*, 427 U.S. 132, 144 (1976) (internal citation and quotation marks omitted). It is dispositive that all New York can muster is that section 211-a imposes a "*far lighter* burden"

on employer speech than AB 1889, and even that is wrong. Defendants' *Brown* Memorandum at 8 (emphasis added).

As this Court previously recognized, section 211-a's recordkeeping procedures are "in all material respects identical to those found in [AB 1889]," *Healthcare Ass'n*, 388 F. Supp. 2d at 24, both requiring "sufficient" records to show that no "state funds" were misspent, N.Y. Lab. Law § 211-a(3); Cal. Gov't Code §§ 16645.2(c), 16645.7(c). The *Brown* Court expressly cited AB 1889's recordkeeping provision as placing a burden on employers, *see* 128 S. Ct. at 2416, notwithstanding the fact that AB 1889 provided that records need not be kept "in any particular form," Cal. Gov't Code § 16648. In addition, section 211-a's restriction on the use of "state funds" to "train managers, supervisors or other administrative personnel regarding methods to encourage or discourage union organization" raises difficult accounting issues for those employers that provide in-house training, *e.g.*, requiring an employer to determine how much time, say, a manager spent training other employees about union-organizing issues and what percentage of the manager's salary should be allocated to that time, and then ensuring that no "state funds" are used to pay that portion of the manager's salary. N.Y. Lab. Law § 211-a(1), (2)(a). This is the type of "allocation of overhead" found burdensome in *Brown*. 128 S. Ct. at 2416.

Section 211-a's use restriction and recordkeeping requirements are enforced, as were those of AB 1889, by the threat of civil penalties. Indeed, whereas section 211-a provides for a civil penalty "three times the amount of money unlawfully expended," N.Y. Lab. Law § 211-a(4), AB 1889 only provided for a civil penalty of "twice the amount of [unlawfully expended] funds," Cal. Gov't Code §§ 16645.2(d), 16645.7(d). This Court has already discussed the obvious "punitive effect" of section 211-a's civil penalties. *Healthcare Ass'n*, 388 F. Supp. 2d at

24. Section 211-a also allows the New York Attorney General to bring lawsuits seeking injunctive and other equitable relief against employers. *See* N.Y. Lab. Law § 211-a(4). Such lawsuits, as the *Brown* Court noted, have a "deterrent" effect because an employer confident that it has satisfied section 211-a must "still bear the costs of defending itself . . . as well as the risk of a mistaken adverse finding by the factfinder." 128 S. Ct. at 2416. Although section 211-a does not have a provision for *qui tam* actions, an action by the Attorney General, as this Court previously pointed out, "could have much the same disruptive effect" if brought "in the midst of a union campaign." *Healthcare Ass'n*, 388 F. Supp. 2d at 24.

New York has called for further factfinding regarding the extent of the burden, but that same call was rejected in *Brown*. *See* Defendants' *Brown* Memorandum at 4. California there argued that "disputed fact[s] . . . render[ed] it impossible for the Chamber of Commerce to establish, as a facial matter, that AB 1889's record-keeping provisions are so unduly burdensome as to effectively regulate the use of an employer's own funds." California Supreme Court Brief at 46. In dissent, Justice Breyer similarly argued that the Court should remand for fact finding on "the degree to which [AB 1889's] provisions actually will deter" employer speech. *Brown*, 128 S. Ct. at 2422. The Supreme Court nonetheless declared the challenged provisions of AB 1889 invalid because the face of the statute revealed an improper labor policy purpose and a cognizable burden on protected speech. For the reasons given above, it is likewise clear that section 211-a imposes a cognizable burden on employer speech and is facially preempted.

## **CONCLUSION**

This Court should declare section 211-a preempted in its entirety and permanently enjoin its enforcement.

Dated: May 28, 2010

Respectfully submitted,

/s/ Willis Goldsmith
WILLIS J. GOLDSMITH
(Bar Roll No. 101815)
JONES DAY
222 East 41st Street
New York, NY 10017
(212) 326-3649
*Attorney for* Amicus Curiae

MICHAEL A. CARVIN
LUKE A. SOBOTA
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
*Attorneys for* Amicus Curiae

ROBIN S. CONRAD
SHANE B. KAWKA
NATIONAL CHAMBER
LITIGATION CENTER, INC.
1615 H Street, N.W.
Washington, D.C. 20062
(202) 463-5337
*Of Counsel*

- 9 -

**CERTIFICATE OF SERVICE**

      I hereby certify that, on May 28, 2010, I caused a copy of the foregoing MEMORANDUM OF *AMICUS CURIAE* CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT to be served by first-class mail upon:

Jeffrey J. Sherrin
James A. Shannon
O'Connell & Aronowitz
54 State Street
Albany, NY 12207-2501
*Attorneys for Plaintiffs*

Seth Kupferberg
Office of the Attorney General
State of New York
120 Broadway, 26th Floor
New York, NY 10271
*Attorney for Defendants*

Stephen M. Kerwin
Office of the Attorney General
State of New York
The Capitol
Albany, NY 12224
*Attorney for Defendants*

                                                    /s/ Luke A. Sobota
                                                    Luke A. Sobota