# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

HEALTHCARE ASSOCIATION OF NEW YORK STATE, INC., NEW YORK ASSOCIATION OF HOMES AND SERVICES FOR THE AGING, INC., NEW YORK STATE HEALTH FACILITIES ASSOCIATION, INC., NYSARC, INC., and UNITED CEREBRAL PALSY ASSOCIATIONS OF NEW YORK STATE, INC.,

*Plaintiffs,*

-against-

DAVID A. PATERSON, Governor of the State of New York; ANDREW M. CUOMO, Attorney General of the State of New York; and M. PATRICIA SMITH, Commissioner of Labor of the State of New York,

*Defendants.*

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
### Index No. 03-CV-0413
### (NPM/RFT)

O'CONNELL AND ARONOWITZ
*Attorneys for Plaintiffs*
54 State Street
Albany NY  12207-2501
(518) 462-5601

JEFFREY J. SHERRIN
CORNELIUS D. MURRAY

Dated: July 23, 2010

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ................................................................................................... 1

    A.    The NLRA Preempts Section 211-a because it Regulates in the Zone Reserved For Market Freedom.......................................................................... 2

    B.    Defendants Cannot Distinguish Section 211-a from the California Statutes. ............................................ 3

    C.    The Threat of a Patchwork of Regulation ...................... 5

CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Building and Constr. Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.*,
507 U.S. 218 (1993) ............................................................................................ 2

*Cardinal Towing and Auto Repair, Inc. v. City of Bedford*,
180 F.3d 686 (5th Cir. 1999) ............................................................................... 3

*Chamber of Commerce v. Brown*,
128 S. Ct. 2408 (2008) ............................................................................... 1, 2, 3

*Garner v. Teamsters Union*,
346 U.S. 485 (1953) ............................................................................................ 5

*LeCroy Research Sys. Corp. v. Commissioner*,
751 F.2d 123 (2d Cir. 1984) ................................................................................ 4

*Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee County*,
431 F.3d 277 (7th Cir. 2005) ............................................................................... 5

*NLRB v. Nash-Finch Co.*,
404 U.S. 138 (1971) ............................................................................................ 5

*Sweet v. Sheahan*,
235 F.3d 80 (2d Cir. 2000) .................................................................................. 4

*Wisconsin Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*
475 U.S. 282 (1986) ............................................................................................ 6

## Federal Statutes

20 U.S.C. § 1400 ............................................................................................................ 6

## New York State Statutes

N.Y. Labor Law § 211-a ....................................................................................... passim

N.Y. Labor Law § 211-a(2) ........................................................................................ 2, 4

N.Y. Labor Law § 211-a(3) ........................................................................................... 8

## Out-of-State Statutes

California Government Code § 16645.2 ................................................................................ 1

California Government Code § 16645.7 ................................................................................ 1

## **INTRODUCTION**

Plaintiffs submit this Memorandum of Law in reply to Defendants' papers in opposition to Plaintiffs' motion for summary judgment.

Since New York Labor Law Section 211-a ("section 211-a"), forbidding the use of state funds to "encourage or discourage" union organization, regulates activity that is within "a zone protected and reserved for market freedom," that law must be preempted by the National Labor Relations Act ("NLRA") under the *Machinists* doctrine, which is the same fate suffered by a California statute that the United States Supreme Court held was preempted in *Chamber of Commerce v. Brown*, 128 S. Ct. 2408 (2008) ("*Brown*"). Defendants' principal defense to *Brown*'s holding that a state may not regulate at all in this area is that summary judgment is premature because they have not finished regulating in the area. Based upon vague promises that they will not regulate too far, the State asks this Court to deny summary judgment. But *Brown* does not allow room for a state to tinker with the boundaries of regulation in the area of employer speech – it stops the state from even getting started. If New York State can burden speech about unionization, then so can every other state, county or municipality, thereby creating a patchwork of regulation that destroys the very uniformity that the NLRA was designed to establish, and that NLRA preemption was designed to protect.

In *Brown*, the Supreme Court found that California Government Code §§ 16645.2 and 16645.7 were preempted because they regulated "conduct that Congress intended to be unregulated" and "left to be controlled by market forces," *Brown*, 128 S. Ct. at 2412 (internal quotations and citations omitted). Defendants concede that the "activities referred to in [section] 211-a fall within the free zone." (Docket No. 109, at 25) Furthermore, this Court has already determined section 211-a to be regulatory in nature (since it does "not address a specific

1

proprietary problem" but instead is "designed to have broad social impact") and to be "remarkably similar" to the California statutes (in that it "significantly curtails the ability of employers to voice their opposition to unions"). (*See* Docket No. 71, at 27, 32, and 35.) *Brown* makes clear that *Machinist* preemption applies in these circumstances and confirms the correctness of this Court's earlier holding that the NLRA preempts section 211-a. *See Brown*, 128 S. Ct. at 2414-2415 ("California plainly could not directly regulate noncoercive speech about unionization by means of an express prohibition. It is equally clear that California may not indirectly regulate such conduct by *imposing spending restrictions on the use of state funds*.") (emphasis supplied).

Defendants previously admitted to the "sufficient overlap between the issues" present in *Brown* and in this matter. (*See* Docket No. 78.) Defendants now attempt to extricate themselves from their earlier proclamation of the potential importance of the *Brown* decision by raising irrelevant issues and claiming insignificant distinctions between the two statutes that this Court has already rejected.

A. The NLRA Preempts Section 211-a because it Regulates in the Zone Reserved For Market Freedom

*Brown* strips section 211-a of any remaining vitality under the *Machinists* preemption doctrine, and this Court should dismiss Defendants' attempt to read *Brown* so narrowly. The Supreme Court found that the statutes at issue in *Brown* were preempted under the *Machinists* doctrine because "they "regulate[d] within 'a zone protected and reserved for market freedom.'" *Brown*, 128 S. Ct. at 2412 (quoting *Building and Constr. Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 227 (1993)). Defendants do not dispute that the "activities referred to in [Section] 211-a(2) fall within the free zone," but then strain to argue that "[section] 211-a does not regulate" these activities. (Docket No. 109, at 25.) This Court has

2

already rejected Defendants' claims that section 211-a is proprietary in nature – "the scope of section 211-a is not sufficiently narrow to overcome the 'inference that its primary goal was to encourage a general policy rather than address a specific problem.'" (Docket No. 71, at 20 (quoting *Cardinal Towing and Auto Repair, Inc. v. City of Bedford*, 180 F.3d 686, 693 (5th Cir. 1999).) Since section 211-a was not meant to serve a fiscal interest, but rather to target employer speech about unionization, it cannot be saved from preemption because it may have an incidental cost-savings effect in narrow circumstances.

Defendants' argument that section 211-a merely limits certain enumerated activities, not all possible targets of regulation of labor relations, is without merit. The employer speech that the statute regulates is within the zone protected by *Machinist* preemption. Nothing in *Brown* suggests that all possible activity has to be regulated before preemption takes effect. There is no doctrine that allows the regulation of three, but not four activities, or any other formula.

**B.   Defendants Cannot Distinguish Section 211-a from the California Statutes.**

Defendants' first point, which attempts to narrow the scope of section 211-a, should be rejected for several reasons. First, Defendants ignore that the correct analysis under *Brown* and *Machinists* is whether section 211-a regulates within the free zone reserved for market activity. If a law encroaches on this zone, then it is preempted, no matter what regulations Defendants suggest will be promulgated to minimize that encroachment. *See Brown*, 128 S. Ct. at 2414 ("In NLRA preemption cases, judicial concern has necessarily focused on the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted.") (internal quotation marks and citation omitted). In this case, the "language of section 211-a, which forbids 'encouraging or discouraging union organization,' like the language of the [California] statute, interfered directly with the NLRA's own system for the promotion or

3

deterrence of union organizing by employers or employees." (Docket No. 71, at 32 (citations and internal quotations omitted.)  It is impossible to read *Brown* as limiting *Machinist* preemption only to the specifics of the California regulation of labor relations.  Otherwise, scores of state and local governmental intrusions into this field could arguably be distinguished from the California statutes that were stricken.  *Brown* does not support the argument that all of these intrusions are permissible, so long as they differ in some degree from California's regulation of labor relations.  Rather, *Brown* establishes the legal principle that a state may not "use its spending power to advance an interest that . . . *frustrates* the comprehensive federal scheme established by [the NLRA]." 128 S. Ct. at 2417 (emphasis added).  As shown in the opening brief (*See* Docket No. 100-3, at 11-15), section 211-a plainly imposes a burden on noncoercive employer speech and is therefore preempted under *Brown*.

Second, Defendants' suggestion that section 211-a is more limited than the California statute, in terms of the scope of state funds it applies to, is at odds with an earlier determination by this Court that section 211-a is actually broader than the California statute, because "[s]ection 211-a(2) is broadly drafted to apply to ***all State contracts regardless of amount***." (Docket 71, at 21) (emphasis added).

Third, this Court should also ignore Defendants' speculation regarding the scope of the proposed regulations to implement section 211-a.  (*See* Docket No. 109, at 12-16.)  As previously stated, when a state is barred from any regulation, it is no defense to argue that it might in the future attempt to limit the *extent* of the regulation.  Moreover, under section 211-a, the Labor Department only has authority to issue regulations regarding the scope of the record-keeping requirement.  It has no authority to change the statute itself.

Furthermore, the Second Circuit has recognized that proposed regulations have no legal effect.  *Sweet v. Sheahan*, 235 F.3d 80, 87 (2d Cir. 2000).  *See also LeCroy Research Sys. Corp.*

4

*v. Commissioner*, 751 F.2d 123, 127 (2d Cir.1984) ("Proposed regulations are suggestions made for comment; they modify nothing.") Here, Defendants do not even offer proposed regulations. They ask the Court to deny summary judgment based upon speculation as to what will be in proposed regulations when they are eventually offered for public comment. The fact that there has been no recent attempted enforcement of section 211-a, as emphasized by Defendants, is of little moment. Enforcement was barred first by this Court's injunction, and thereafter by stipulation.

### C.     The Threat of a Patchwork of Regulation

Finally, Defendants also raise the argument that the proposed regulations for section 211-a mean that there "is no likelihood implementation of § 211-a under these guidelines will encroach on NLRA policy, and certainly no basis to find preemption on summary judgment grounds." (Docket No. 109, at 13.) The "purpose of the [NLRA] was to obtain 'uniform application' of its substantive rules and to avoid the 'diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.'" *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144 (1971) (quoting *Garner v. Teamsters Union*, 346 U.S. 485, 490 (1953)); . If section 211-a is not preempted, then a plethora of other similar laws will frustrate Congress' goal of uniform application of labor rules. This is already evidenced by two New York county laws, enabled by section 211-a, in addition to other laws around the country. *See, e.g.*, the county ordinance found preempted by the NLRA in *Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee County*, 431 F.3d 277 (7th Cir. 2005).

Plaintiffs have been able to identify a number of relatively recent local laws which, like section 211-a, seek to deprive employers of the resources necessary to exercise their advocacy rights under the NLRA. They do so, however, using different terms, encompassing different funds, targeting different activities, imposing different reporting and accounting obligations, and

5

threatening different sanctions. These local laws emanate from towns and counties of all sizes around the country.

The 10 local ordinances that the Plaintiffs have been able to identify are: Allegheny County, PA, (86-01, passed in 2001)[1]; Los Angeles County, CA (Title 2, § 2.201.050(B), passed in 1999)[2]; Marin County, CA (Part 3435, § 2.50.130, passed in 2005)[3]; Nassau County, NY (Misc. Laws, Title 56, passed in 2003)[4]; Santa Cruz County, CA (Title 2, § 2.122.130, 2001)[5]; Suffolk County, NY (Part IV, Chapter 466, passed in 2003)[6]; Ventura County, CA (Div. 4, Chp. 9.5, § 4962, passed in 2001)[7]; Fairfax, CA (Title 8, § 8.56.120, passed in 2002)[8]; Pittsburgh, PA (Title 1, Art. VII, § 161.35(l), passed in 2001)[9]; Watsonville, CA (Title 2, Chp. 5, § 2-5.13, passed in 2002)[10].

Thus, the uniformity of the NLRA has been threatened not just by the possibility of 50 different states enacting laws like section 211-a, but also by innumerable counties and cities. Nor would there be any restriction on school districts imposing similar rules, such as for private schools that are funded to meet the districts' obligations to provide free appropriate public education under the Individuals with Disabilities Education Act. 20 U.S.C. §§ 1400 *et seq.*

---

[1] *See* Declaration of Jeffrey J. Sherrin, Ex. C.

[2] *See* Declaration of Jeffrey J. Sherrin, Ex. D.

[3] *See* Declaration of Jeffrey J. Sherrin, Ex. E.

[4] *See* Declaration of Jeffrey J. Sherrin, Ex. A.

[5] *See* Declaration of Jeffrey J. Sherrin, Ex. F.

[6] *See* Declaration of Jeffrey J. Sherrin, Ex. B.

[7] *See* Declaration of Jeffrey J. Sherrin, Ex. G.

[8] *See* Declaration of Jeffrey J. Sherrin, Ex. H.

[9] *See* Declaration of Jeffrey J. Sherrin, Ex. I.

[10] *See* Declaration of Jeffrey J. Sherrin, Ex. J.

It is evident that a patchwork of different state and local laws that will impair the ability of participants in the NLRA processes to exercise their full panoply of rights has not only gained a foothold, but, absent a preemption finding, will undoubtedly spread across the country, leading to the "incremental diminishment" of the Board's control over enforcement of the NLRA that the Supreme Court in *Wisconsin Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282 (1986), sought to prevent. The complexities imposed by multiple, inconsistent state and local laws threaten not just the national uniformity of labor relations and the primary jurisdiction of the NLRB, but they also create an enormous burden on employers operating in or deriving payment for goods or services from multiple states or municipalities.

This burden on the NLRA and employers is heightened by the different standards, applicability, reporting and accounting requirements, and sanctions imposed by these various laws. A comparison of just the laws in New York State is instructive. For example, in section 211-a the operative language is "encourage or discourage," which terms are not defined by the statute. Contrast this with the Nassau and Suffolk County Laws. *See* Nassau County Misc. Laws, Title 56, §§ 2(A), 3[11]: ("Assist, Promote or Deter Union Organizing," defined as "any attempt by an employer to influence the decision of its employees in the County of Nassau or those of its subcontractors regarding either of the following: 1.) whether to support or oppose a labor organization that represents or seeks to represent those employees; and 2.) whether to become a member of any labor organization."); Suffolk County Law §§ 466-2, 466-3[12] (same as Nassau County.) The multiplicity of operative terms used by these state and municipal laws virtually assures inconsistent interpretation and enforcement and invites chaos.

These laws also vary widely with respect to their monetary thresholds. Section 211-a has

---

[11] *See* Declaration of Jeffrey J. Sherrin, Ex. A.

[12] *See* Declaration of Jeffrey J. Sherrin, Ex. B.

7

no threshold, while others have varying minimum monetary triggers for enforcement. *See* Cal. Gov. Code § 16645.7(a) [$10,000], Nassau County Misc. Laws, Title 56, § 2(C) [$50,000] and Suffolk County Law § 466-2 [$50,000]. As other states and municipalities adopt their own laws, it will become increasingly difficult for an employer to identify which laws it might become subject to, and what their restrictions are. Nassau and Suffolk, for example, are neighboring counties on Long Island, in New York State. Thus, a hospital on Long Island already has to comply with the different restrictions imposed by the State of New York in Labor Law § 211-a, and also the Suffolk and Nassau counties' ordinances.

Likewise, the existing restrictive laws also provide for a wide spectrum of possible penalties, which will not only impair an employer's ability to assess the risks associated with the exercise of its rights under the NLRA, but also create such a threat from multiple jurisdictions' penalties over any speech or spending that employers will be completely chilled from participation. *See* New York Labor Law § 211-a(2); Nassau County Misc. Laws, Title 56, §7(A): ); Suffolk County Law §§ 466-7: same as Nassau County, *supra*.

Further, reporting and accounting becomes an increasingly burdensome responsibility for multi-jurisdictional employees. Even if the state or municipal law does not require reporting or separate accounts, it becomes a practical necessity to avoid imposition of punitive sanctions. Thus, employers may have to establish separate accounts and/or reporting for every jurisdiction, state or local, from which they derive funds. Once again, section 211-a differs from the Nassau and Suffolk requirements. *See* New York Labor Law § 211-a(3) (maintain three years of audited financial records); Nassau County Misc. Laws, Title 56, §3(I) (records sufficient to show that no county funds were used in violation of county law, without time limit); Suffolk County Law § 466-3(I) (same as Nassau County).

Given the acknowledged difficulty employers already face in navigating the labor

8

organizing process, it is not hard to imagine that an employer, faced with multiple restrictions from different jurisdictions, will have no practical choice but to forgo its right to participate in the organizing campaign. This is especially true because section 211-a, like many of the other state and municipal laws of this type, restricts the ability of employers to hire consultants and/or attorneys to assist the employer in formulating a legal response to the organizing campaign.

Rather than a uniform national labor policy that fosters robust debate, state and local laws like those in New York will incrementally diminish that uniformity until there is an oppressive patchwork of differing and burdensome restrictions on, and sanctions for, an employer's exercise of its rights under the NLRA. Those restrictions will stifle the debate the NLRA was designed to promote and protect, and will frustrate the goals Congress sought to achieve in enacting the NLRA.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment should be granted.

DATED:    Albany, New York
          July 23, 2010

O'CONNELL AND ARONOWITZ
By: _____
    Jeffrey J. Sherrin
    Bar Roll No. 102601
Attorneys for Plaintiffs
54 State Street
Albany NY  12207-2501
(518) 462-5601

G:\DATA\ATTORNEY\DEN\HANYS\Union Neutrality\REPLYMLhanys-SJ -3.doc