UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HEALTHCARE ASSOCIATION OF NEW
YORK STATE, et al.,

                                               Plaintiffs,

    -v.-                                               1:03-CV-0413
                                                        (NPM)

ANDREW M. CUOMO, Governor of the
State of New York; ERIC T.
SCHNEIDERMAN, Attorney General of
the State of New York; and COLLEEN C.
GARDNER, Commissioner of Labor of the
State of New York,

                                             Defendants[1].
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| O'CONNELL & ARONOWITZ<br>*Attorneys for Plaintiffs*<br>54 State Street<br>Albany, NY 12207-2501 | JEFFREY J. SHERRIN<br>JAMES A. SHANNON |
| HON. ANDREW M. CUOMO,<br> Attorney General for the State of<br> New York<br>*Attorney for Defendants*<br>The Capitol<br>Albany, NY 12224 | STEPHEN M. KERWIN<br>Assistant Attorney General |
| 120 Broadway<br>New York, NY 10271 | SETH KUPFERBERG<br>Assistant Attorney General |

---

[1] Pursuant to Fed. R. Civ. P. 25(d), these defendants are substituted for David A. Paterson, Andrew M. Cuomo and M. Patricia Smith, respectively.

Neal P. McCurn, Senior District Judge

*MEMORANDUM, DECISION AND ORDER*

## *I.     Introduction*

Presently before the court is a motion for summary judgment by plaintiffs limited to the issue of whether the National Labor Relations Act, 49 Stat. 449, as amended, 29 U.S.C. § 151 et seq ("NLRA") pre-empts New York Labor Law section 211-a ("§ 211-a") under the doctrine set forth in International Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations Commission, 427 U.S. 132, 96 S.Ct. 2548 (1976) ("'Machinists' pre-emption"). Defendants oppose and plaintiffs reply.  Decision on the pending motion is rendered on the papers submitted, without oral argument.

## *II.  Background*

Familiarity with the factual and procedural background of this action is presumed, and will only be discussed where relevant to the pending motion.

Plaintiffs, various not-for-profit corporations or trade associations involved in providing healthcare or representing providers of healthcare,[2] commenced this action seeking a declaration that § 211-a is pre-empted by the NLRA and the Labor Management Relations Disclosure Act, 29 U.S.C. § 401 et seq., and that it violates their First Amendment and due process rights.  Defendants – the Governor, Attorney General and Commissioner of the Department of Labor of the State of

---

[2] Plaintiffs are Healthcare Association of New York State, Inc.; New York Association of Homes and Services for the Aging, Inc.; New York State Health Facilities Association, Inc.; NYSARC, Inc.; and United Cerebral Palsy Associations of New York State, Inc.

1

New York – sought dismissal of this action for failure to state claims upon which relief may be granted, or in the alternative summary judgment, and Plaintiffs cross moved for summary judgment.  This court, finding the issues presented to be predominantly legal, treated the motions as motions for judgment on the pleadings, and granted judgment for Plaintiffs on the basis of Machinists pre-emption.  See Healthcare Ass'n of New York State v. Pataki, 388 F.Supp.2d 6 (N.D.N.Y. 2005).  While Plaintiffs also argued that § 211-a is preempted by the NLRA under San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773 (1959) ("Garmon preemption"), this court found it unnecessary to decide that issue once it found preemption under Machinists.  Defendants appealed and the Court of Appeals for the Second Circuit, having reviewed this court's order as the entry of summary judgment for Plaintiffs, reversed this court's decision, finding material questions of fact, and remanded to this court for further proceedings consistent with its opinion.  See Healthcare Ass'n of New York State v. Pataki, 471 F.3d 87 (2d Cir. 2006).  The Second Circuit conducted a thorough analysis to determine whether § 211-a is pre-empted under Garmon.  In attempting to decide whether there is a strong showing that the State has interfered with the protections offered by section 8(c) of the NLRA, the court found "vital fact issues" to be resolved regarding whether § 211-a is limited to a restriction on the use of State funds or whether it overreaches in an attempt to regulate the employers' speech regardless of whether State funds are at issue.  Id., at 106.  Finding that the doctrines of Garmon pre-emption and Machinists pre-emption "are conceptually complementary" and "actually tend toward the same point[,]" the court concluded that the answer to whether section 211-a is pre-empted under Machinists will depend on the same factors identified as determinative under the court's Garmon

2

analysis. Id. at 107-08 (citations omitted). Specifically, the court noted that in this case, both Garmon and Machinists tend toward "requiring New York to respect Congress's intent to leave some activities unregulated, so that the parties may resolve their disputes by the use of the economic weapons left to them." Id. at 107 (citations omitted).

Prior to the Second Circuit's remand, a decision relied upon by this court in granting judgment to Plaintiffs, Chamber of Commerce v. Lockyer, 364 F.3d 1154 (9th Cir. 2004), was reversed by an en banc panel of the Court of Appeals for the Ninth Circuit, see 463 F.3d 1076 (9th Cir. 2006). Six months after the filing of the Second Circuit's mandate in this case, the Supreme Court reversed the decision of the en banc panel, and held that under Machinists, provisions of the California statute at issue there are pre-empted by the NLRA "because they regulate within a 'zone protected and reserved for market freedom.'". See Chamber of Commerce v. Brown, 554 U.S. 60, 66 128 S.Ct. 2408, 2412 (2008) (quoting Bldg. & Constr. Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc., 507 U.S. 218, 227, 113 S.Ct. 1190 (1993) ("Boston Harbor"). The Supreme Court did not reach the question whether the provisions would also be preempted under Garmon. See id., at 66, 128 S.Ct. at 2412.

On remand, this court granted the joint request of the parties to stay further briefing in this action pending the Supreme Court's decision in Brown. Once the Brown opinion was issued, this court directed the parties to brief its impact on this case. Thereafter, the court granted requests of amici curiae National Labor Relations Board and Chamber of Commerce of the United States of America to submit additional briefs. Defendants argued that Brown does not disturb the Second Circuit's holding in Healthcare Association which therefore remains

3

binding on this court.  Conversely, Plaintiffs as well as amici, Chamber of Commerce and NLRB, argued that Brown unquestionably invalidates the basis for the Second Circuit's holding, and requires that this court find section 211-a is invalidated under Machinists preemption.  Plaintiffs asked that Defendants be allowed to file an answer and Plaintiffs be allowed to submit another motion for summary judgment. After reviewing the briefs and the relevant caselaw, this court determined that the holding in Brown changed the relevant law such that it is no longer bound by the Second Circuit's mandate.  Accordingly, Defendants were directed to file their answer and Plaintiffs were permitted to file the present  motion for summary judgment.  Plaintiffs now seek summary judgment solely as to the issue of whether § 211-a is pre-empted by the NLRA under the Machinists doctrine.

### III. *Discussion*

#### *A.  Legal Standard*

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant has the initial burden to show the court why it is entitled to summary judgment.  See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If the movant meets its burden, the burden shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact.  See id., at 273 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986)).

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial."  Major League Baseball

Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotation and citation omitted). Finally, when the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598 (1970)).

Plaintiffs argue that as a matter of law, § 211-a is pre-empted by the NLRA pursuant to Machinists. Defendants concede that activities referred to in § 211-a fall within the "Machinists free zone," but argue that limiting the use of State funds, as § 211-a does, is not prohibited regulation, and therefore, the statute is not pre-empted. Defs.' Mem. of Law at 2, Dkt. No. 109.[3] Defendants also argue that § 211-a is not pre-empted by the NLRA because it is different in all material respects from the California statute at issue in Brown. Defendants further argue that § 211-a, as applied and as will be applied after proposed regulations are enacted, resolves the issues raised by the Second Circuit and therefore, is not pre-empted by the NLRA.

While the NLRA contains no express preemption provision, the Supreme Court has held that Congress implicitly mandated two types of preemption necessary to implement federal labor policy: Garmon preemption and Machinists preemption. See Brown, 128 S.Ct. at 2412 (citing Garmon, 359 U.S. 236, 79 S.Ct. 773; Machinists, 427 U.S. 132, 140 S.Ct. 2548). See also Boston Harbor, 507 U.S.

---

[3] Defendants refer to the zone of labor activity that is "protected and reserved for market freedom" as set forth in Machinists. Chamber of Commerce v. Brown, 554 U.S. 60, 66, 128 S.Ct. 2408, 2412 (2008) (quoting Bldg. & Constr. Trades Council v. Associated Builders & Contractors of Mass./R. I., Inc., 507 U.S. 218, 227, 113 S.Ct. 1190 (1993) ("Boston Harbor")).

5

at 224, 113 S.Ct. at 1194, 1195 (1993).  Garmon preemption forbids state or local regulation of activities that are actually or arguably protected or prohibited by either section 7 or section 8 of the NLRA.  See Boston Harbor, 507 U.S. at 224, 113 S.Ct. at 1194 (citing Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 748, 105 S.Ct. 2380, 2394 (1985)).  The second type of preemption, Machinists preemption, preempts regulations that interfere with Congress's plan to leave certain areas unregulated by the states or the NLRB, but left "to be controlled by the free play of economic forces."  Brown, 128 S.Ct. at 2412 (quoting Machinists, 427 U.S. at 140, 140 S.Ct. 2553).  See also Healthcare Ass'n, 471 F.3d at 94.

      This court initially held that § 211-a is preempted under Machinists.  On appeal, the Second Circuit noted that this court "quite reasonably relied extensively on the Ninth Circuit's decision of a very similar case in Chamber of Commerce v. Lockyer, 364 F.3d 1154 (9th Cir. 2004)."  Healthcare Ass'n, 471 F.3d at 93.  In Lockyer, the Ninth Circuit originally concluded that the California statute at issue was preempted by the NLRA under Machinists because it "undermine[d] federal labor policy by altering Congress' design for the collective bargaining process."  Lockyer, 364 F.3d at 1159.  Of course, at the time of the Second Circuit's opinion in this case, the Ninth Circuit had then, on rehearing, "recently decided that the California statute at issue is not preempted by federal labor law."  Id. (citing Chamber of Commerce v. Lockyer, 463 F.3d 1076 (9th Cir. 2006) (en banc)).  The Supreme Court reversed, finding preemption under Machinists.  See Brown, 554 U.S. at 66, 128 S.Ct. at 2412.

      In Brown, the question presented to the Court was whether two specific provisions of a California statute, referred to as AB 1889, were preempted by federal law mandating that certain zones of labor activity be unregulated.  AB 1889

6

precludes the use of state funds, whether by reimbursement, grant, contract, use of state property, or pursuant to a state program, "to assist, promote, or deter union organizing." CAL. GOV'T CODE §§ 16645.1 through 16645.7 (2001). The specific provisions that the Court addressed dealt with grants of state funds, see § 16645.2, and the receipt of state funds by a private employer in excess of $10,000 in any calendar year, see § 16645.7.

The Court initially took note of the legislative intent of AB 1889, set forth in its preamble:

> It is the policy of the state not to interfere with an employee's choice about whether to join or to be represented by a labor union. For this reason, the state should not subsidize efforts by an employer to assist, promote, or deter union organizing. It is the intent of the Legislature in enacting this act to prohibit an employer from using state funds and facilities for the purpose of influencing employees to support or oppose unionization and to prohibit an employer from seeking to influence employees to support or oppose unionization while those employees are performing work on a state contract.

Brown, 554 U.S. at 62-63, 128 S.Ct. at 2411 (quoting 2000 Cal. Stats. ch. 872, § 1). The statute's prohibitions include "'any attempt by an employer to influence the decision of its employees' regarding '[w]hether to support or oppose a labor organization' and '[w]hether to become a member of any labor organization.'" Id., at 63, 128 S.Ct. at 2411 (quoting § 16645(a)). The statute's spending restriction "applies to 'any expense, including legal and consulting fees and salaries of supervisors and employees, incurred for ... an activity to assist, promote, or deter union organizing.'" Id. (quoting § 16646(a)).

The Court also took note of AB 1889's "formidable enforcement scheme," which it aptly summarized:

7

> Covered employers must certify that no state funds will be used for prohibited expenditures; the employer must also maintain and provide upon request 'records sufficient to show that no state funds were used for those expenditures.' §§ 16645.2(c), 16645.7(b)-(c). If an employer commingles state and other funds, the statute presumes that any expenditures to assist, promote, or deter union organizing derive in part from state funds on a pro rata basis. § 16646(b). Violators are liable to the State for the amount of funds used for prohibited purposes plus a civil penalty equal to twice the amount of those funds. §§ 16645.2(d), 16645.7(d). Suspected violators may be sued by the state attorney general or any private taxpayer, and prevailing plaintiffs are 'entitled to recover reasonable attorney's fees and costs.' § 16645.8(d).

Id., at 63-64, 128 S.Ct. at 2411.

Recognizing Congress's explicit direction to leave noncoercive speech unregulated, the Court noted that "California's policy judgment that partisan employer speech necessarily 'interfere[s] with an employee's choice about whether to join or to be represented by a labor union' is the same policy judgment that the NLRB advanced under the Wagner Act and that Congress renounced in the Taft-Hartley Act" and therefore, "[t]o the extent §§ 16645.2 and 16645.7 actually further the express goal of [the California statute], the provisions are unequivocally pre-empted." Id., at 69, 128 S.Ct. at 2414.

The Court went on to consider, but find unpersuasive, each of the reasons set forth by the Court of Appeals in support of its decision that §§ 1645.2 and 1645.7 are not pre-empted. Relevant here is the Court's extensive analysis of the Ninth Circuit's conclusion that because the spending restrictions set forth by AB 1889 apply only to the use of state funds, the statute is not pre-empted. Id. Regarding the restrictions on the use of state funds, the Court began its analysis by noting that "[i]n NLRA pre-emption cases, judicial concern has necessarily focused on *the*

8

*nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted*." Id. (quotation and citations omitted) (emphasis added). Accordingly, the Court continued, "California plainly could not directly regulate noncoercive speech about unionization by means of an express prohibition. *It is equally clear that California may not indirectly regulate such conduct by imposing spending restrictions on the use of state funds*." Id. at 69, 128 S.Ct. at 2414-15 (emphasis added). However, the Court noted that "when a State acts as a "market participant with no interest in setting policy," as opposed to a "regulator," it does not offend the pre-emption principles of the NLRA." Id., at 70, 128 S.Ct. at 2415 (quoting Boston Harbor, 507 U.S., at 229, 113 S.Ct. 1190). The Court previously found that a state agency acted as a market participant where "the challenged action 'was specifically tailored to one particular job,' and aimed 'to ensure an efficient project that would be completed as quickly and effectively as possible at the lowest cost.'" Id. (quoting Boston Harbor at 232, 113 S.Ct. 1190).

Finding that "AB 1889 is neither 'specifically tailored to one particular job' nor a 'legitimate response to state procurement constraints or to local economic needs,'" the court concluded that "[i]t is beyond dispute that California enacted AB 1889 in its capacity as a regulator rather than a market participant." Id., (quoting Wisconsin Dep't of Indus. v. Gould Inc., 475 U.S. 282, 291, 106 S.Ct. 1057 (1986)). In support of this conclusion, the Court referenced the preamble of AB 1889, which "candidly acknowledges [that] the legislative purpose is not the efficient procurement of goods and services, but the furtherance of a labor policy." Id. The objective of AB 1889, the Court stated, is not the State's "legitimate proprietary interest in ensuring that state funds are spent in accordance with the purposes for which they are appropriated," but instead "AB 1889 imposes a

9

*targeted negative restriction on employer speech about unionization.*" Id., at 70-71, 128 S.Ct. at 2415 (emphasis added).

The Court disagreed with the Court of Appeals decision that although California did not act as a market participant in enacting AB 1889, the statute was not pre-empted by the NLRA because it imposed a "use" restriction instead of a "receipt" restriction on state funds, and therefore, "an employer has and retains the freedom to spend its own funds however it wishes." Id., at 71, 128 S.Ct. at 2415-16 (quoting Lockyer, 463 F.3d, at 1088).  The Court noted that the reliance on a "use" restriction rather than a "receipt" restriction is no more consequential than the State of Wisconsin's reliance on its spending power rather than its police power in Gould.  By coupling its use restriction with "compliance costs and litigation risks that are calculated to make union-related advocacy prohibitively expensive for employers that receive state funds . . . AB 1889 effectively reaches beyond the use of funds over which California maintains a sovereign interest." Id. (citation and quotation omitted).  The Court went on to discuss the compliance burdens and litigation risks imposed by AB 1889, and concluded that these

> enforcement mechanisms put considerable pressure on an employer either to forgo his free speech right to communicate his views to his employees or else to refuse the receipt of any state funds.  In so doing, the statute impermissibly predicates benefits on refraining from conduct protected by federal labor law and chills one side of the robust debate which has been protected under the NLRA.

Id., at 73, 128 S.Ct. at 2416-17 (quotations and citations omitted).  The Court then concluded its analysis by setting forth the principle that "it is not permissible for a State to use its spending power to advance an interest that – even if legitimate in

10

the absence of the NLRA – frustrates the comprehensive federal scheme established by that Act." Id., at 73-74, 128 S.Ct. at 2417 (citations and quotations omitted).

The statute at issue in this case, § 211-a, prohibits the use of State funds to train employees or to hire employees or contractors to "encourage or discourage" union organizing. N.Y. LAB. LAW 211-a (McKinney 2002). The statute also sets forth reporting requirements and enables the Commissioner of the Department of Labor to, among other things, promulgate regulations regarding these requirements. Specifically, the statute requires employers engaging in the prohibited activities to "maintain, for a period of not less than three years . . . financial records . . . sufficient to show that state funds were not used to pay for such activities." Id. at § 211-a(3). In addition, the Attorney General is given authority to enforce the statute by seeking return of the unlawfully expended funds and a civil penalty. The penalty is not to exceed one thousand dollars, except where an employer is shown to knowingly violate the statute or where it violated the statute within the preceding two years. In the case of a knowing violation or a violation within the preceding two years, the penalty shall not exceed "one thousand dollars or three times the amount of money unlawfully expended, whichever is greater." Id., § 211-a(4). Regarding the legislative intent of § 211-a, the statute explicitly provides that

> [t]he legislature hereby finds and declares that sound fiscal management requires vigilance to ensure that funds appropriated by the legislature for the purchase of goods and provision of needed services are ultimately expended solely for the purpose for which they were appropriated. The legislature finds and declares that when public funds are appropriated for the purchase of specific goods and/or

11

> the provision of needed services, and those funds are instead used to encourage or discourage union organization, the proprietary interests of this state are adversely affected. As a result, the legislature declares that the use of state funds and property to encourage or discourage employees from union organization constitutes a misuse of the public funds and a misapplication of scarce public resources, which should be utilized solely for the public purpose for which they were appropriated.

Id. at § 211-a(1).

Defendants' arguments against summary judgment make much of the differences between AB 1889 and § 211-a. According to Defendants, § 211-a differs from AB 1889 in all material respects, such that Brown is not binding here. Specifically, Defendants argue that the Court in Brown cited AB 1889's stated goal to further a labor policy as well as its deterrent litigation risks as reasons for its holding that AB 1889 is pre-empted by the NLRA. Section 211-a is distinguishable, Defendants argue, because it explicitly sets forth its goal as a procurement policy and because its litigation risks are less onerous. Plaintiffs' argument, which this court finds persuasive, is that Brown should not be read so narrowly as to apply solely to California's regulation. Moreover, Defendants' ultimate argument that the limitation on State funds set forth by § 211-a is not a prohibited regulation is belied by the legal principle set forth in Brown that "it is not permissible for a State to use its spending power to advance an interest that – even if legitimate in the absence of the NLRA – frustrates the comprehensive federal scheme established by that Act." Id., at 73-74, 128 S.Ct. at 2417 (citations and quotations omitted). Like AB 1889, § 211-a "imposes a targeted negative restriction on employer speech about unionization." Brown, 554 U.S. at 71, 128

12

S.Ct. at 2415. Because § 211-a regulates in a zone protected and reserved for market freedom, it is pre-empted by the NLRA pursuant to Machinists. Accordingly, Plaintiffs are entitled to summary judgment on this issue as a matter of law.

## *IV.  Conclusion*

In accordance with the foregoing, it is ORDERED that the motion for summary judgment by Plaintiffs against Defendants, see Dkt. No. 100, is GRANTED, and it is further

DECLARED that N.Y. LAB. LAW § 211-a is preempted by the National Labor Relations Act under the doctrine of Machinists pre-emption, and accordingly Defendants are permanently enjoined from implementing or enforcing that statute.

The Clerk of the Court is directed to enter judgment in favor of the Plaintiffs in accordance herewith and to dismiss this action in its entirety.

IT IS SO ORDERED.

DATED:   September 7, 2011
         Syracuse, New York

_____
Neal P. McCurn
Senior U.S. District Judge